UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
═══════════════════════════════════════════════════════════

THOMAS GORDON,

              Plaintiff,

-v.-                                                    3:10-cv-00124 NPM

COMMISSIONER OF
SOCIAL SECURITY,

              Defendant.
--------------------------------------------------------------------------------------------------

| APPEARANCES: | OF COUNSEL: |
| --- | --- |
| Office of Edward T. Waples<br>Attorney for Plaintiff<br>84 Court Street<br>Binghamton, NY 13901 | Edward T. Waples, Esq. |
| Social Security Administration<br>Office of Regional General Counsel<br>Region II<br>26 Federal Plaza - Room 3904<br>New York, NY 10278 | Andreea L. Lechleitner, Esq. |

NEAL P. McCURN, Senior District Court Judge

## **MEMORANDUM - DECISION AND ORDER**

    This action was filed by the plaintiff Thomas Gordon ("plaintiff") pursuant

to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of

Social Security ("Commissioner"), who denied his application for disability

benefits.  Currently before the court is the plaintiff's motion for judgment on the

pleadings (Doc. No. 7) seeking reversal of the Commissioner's decision and an

order of remand for a new hearing, and the Commissioner's motion for judgment

on the pleadings (Doc. No. 10) seeking affirmation of the Commissioner's

findings.  For the reasons set forth below, the Commissioner's motion is granted.

I.      **Facts and Procedural History**

        The following facts are taken from plaintiff's statement of the case and are

incorporated by the Commissioner in his brief, with the exception of any

inferences or conclusions asserted by the plaintiff.  The court has also

supplemented the facts as it deemed necessary.  References to the transcript which

appear on the plaintiff's brief (Doc. No. 9) have been omitted.  The plaintiff filed

for Social Security Disability Benefits as a result of a schizoaffective disorder. A

hearing was held in Binghamton, New York on July 2, 2009 before Administrative

Law Judge Thomas P. Tielens ("ALJ"), where the plaintiff appeared and gave

testimony. On July 30, 2009, the ALJ issued an unfavorable decision, finding that

the plaintiff was not disabled as defined by the Social Security Act.

        At the time of the hearing, the plaintiff was 28 years of age.  The plaintiff

testified from jail, where he was incarcerated due to a probation violation for an

underlying charge of drug possession.  Plaintiff had dropped out of a substance

abuse treatment program, resulting in the probation violation. Tr. 18.  Plaintiff has

obtained a GED.  He served in the United States Army for less than two years

when he was diagnosed with a  schizoaffective disorder, at which time he was

discharged.  He has been granted a 100% service related disability from the

Veteran's Administration ("VA") for this disorder. Tr. 18.  He also has a two year

college degree in plumbing, heating, refrigeration and air conditioning. He has

prior work experience in heating, ventilation and air conditioning ("HVAC").  He

states he has difficulty working because he has trouble with people.  He states that

he is suspicious and paranoid and thinks people are trying to hurt him or kill him.

He also has difficulty concentrating. He takes the medication Risperdal for his

schizoaffective disorder.  There are treatment notes totaling 355 pages from the

VA, dated from 7/9/2004 through 10/14/2008.  This total includes notes for

inpatient treatment on four separate occasions.  The plaintiff needed inpatient

treatment after it was determined that he was a danger to himself or to others.

The record contains the report from the Department of Veterans Affairs

finding an 100% service connected disability, which states that the Department of

Veterans Affairs' review of the VA's treatment notes from 2003 indicate ongoing

outpatient treatment for schizoaffective disorder.  There were multiple psychiatric

hospitalizations primarily for mental illness but often related to substance abuse.

It was noted that the plaintiff had his first suicide attempt at age 14 and has had

suicidal ideations since then.  Reference was made to paranoia and occasional hallucinations.  Full fledged psychotic symptoms were noted.  Plaintiff had delusions of thinking he was invisible.  The conclusion was that the plaintiff's symptoms were consistent with the diagnosis of chronic and quite severe schizoaffective disorder that is currently in the depressed phased.  The report went on to state that an evaluation of 100% is assigned when there is evidence of total occupational and social impairment due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living including maintenance of personal hygiene; disorientation to time or place; or memory loss for names of close relatives, own occupation or own name.

It is admitted that the plaintiff has a substance abuse problem.  The ALJ concluded that if the plaintiff stopped substance use, he would be able to perform past relevant work as an HVAC laborer and therefore was not disabled within the meaning of the Social Security Act.  The issue before the court is whether the decision of the ALJ dated July 30, 2009, finding that the plaintiff was not disabled as defined by the Social Security Act, is against the substantial weight of evidence in this case.

## II.    Discussion

### A.    Standard of Review

This court does not review a final decision of the Commissioner <u>de novo</u>,
but instead "must determine whether the correct legal standards were applied and
whether substantial evidence supports the decision."  <u>Butts v. Barnhart</u>, 388 F.3d
377, 384 (2d Cir. 2004) (internal citations omitted).  <u>See also</u> <u>Halloran v. Barnhart</u>,
362 F.3d 28, 31 (2d Cir. 2004);  <u>Balsamo v. Chater</u>, 142 F.3d 75, 79 (2d Cir.
1998).  "Substantial evidence" is evidence that amounts to "more than a mere
scintilla.  It means such relevant evidence as a reasonable mind might accept as
adequate to support a conclusion."  <u>Halloran</u>, 362 F.3d at 31 (<u>quoting</u> <u>Richardson</u>
<u>v. Perales</u>, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971)).  "An ALJ must set forth the
crucial factors justifying his findings with sufficient specificity to allow a court to
determine whether substantial evidence supports the decision."  <u>Gravel v.</u>
<u>Barnhart</u>, 360 F.Supp.2d 442, 444-45 (N.D.N.Y. 2005) (<u>citing</u> <u>Ferraris v. Heckler</u>,
728 F.2d 582, 587 (2d Cir. 1984)).   When reviewing a determination by the
Commissioner, a district court, in its discretion, "shall have the power to enter,
upon the pleadings and transcript of record, a judgment affirming, modifying, or
reversing the decision of the Commissioner of Social Security, with or without
remanding the cause for a rehearing."  42 U.S.C. § 405(g).

**B.     Disability Defined**

An individual is considered disabled for purposes of his or her eligibility for

Social Security Disability if he or she is unable to

> engage in any substantial gainful activity by reason of
> any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months[.]

42 U.S.C. § 423(d)(1)(A).

The Commissioner may deem an individual applicant for Social Security

Disability to be disabled

> only if his physical or mental impairment or impairments
> are of such severity that he is not only unable to do his
> previous work but cannot, considering his age,
> education, and work experience, engage in any other
> kind of substantial gainful work which exists in the
> national economy, regardless of whether such work
> exists in the immediate area in which he lives, or whether
> a specific job vacancy exists for him, or whether he
> would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

Social Security Administration regulations set forth a five-step sequential

evaluation process, by which the Commissioner is to determine whether an

applicant for Social Security Disability is disabled pursuant to the aforementioned

statutory definition.  See 20 C.F.R. § 404.1520.  The Second Circuit Court of

6

Appeals summarizes this process as follows:

> The first step of this process requires the Secretary to determine whether the claimant is presently employed. If the claimant is not employed, the Secretary then determines whether the claimant has a "severe impairment" that limits [his] capacity to work. If the claimant has such an impairment, the Secretary next considers whether the claimant has an impairment that is listed in Appendix 1 of the regulations. When the claimant has such an impairment, the Secretary will find the claimant disabled. However, if the claimant does not have a listed impairment, the Secretary must determine, under the fourth step, whether the claimant possesses the residual functional capacity[1] to perform [his] past relevant work. Finally, if the claimant is unable to perform [his] past relevant work, the Secretary determines whether the claimant is capable of performing any other work. If the claimant satisfies [his] burden of proving the requirements in the first four steps, the burden then shifts to the Secretary to prove in the fifth step that the claimant is capable of working.

Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999) (quoting Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996)).

The fifth step "requires the [ALJ] to consider the so-called vocational factors (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant

---

[1]     Residual functional capacity ("RFC") refers to what a claimant can still do in a work setting despite any physical and/or mental limitations caused by his or her impairments and any related symptoms, such as pain.  An ALJ must assess the patient's RFC based on all the relevant evidence in the case record. See 20 C.F.R. § 404.1545 (a)(1).

numbers in the national economy." <u>Quezada v. Barnhart</u>, 2007 WL 1723615

(S.D.N.Y. 2007) (internal quotations omitted).

As a threshold issue, the court emphasizes that 42 U.S.C. § 423(d)(1)(A)

specifically states that a person is deemed disabled if he or she is unable to engage

in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than twelve

months.  Substantial work activity is defined as "work activity that involves doing

significant physical or mental activities.  Your work may be substantial even if it

is done on a part-time basis or if you do less, get paid less, or have less

responsibility than when you worked before."  Gainful work activity is defined as

"work activity that you do for pay or profit.  Work activity is gainful if it is the

kind of work usually done for pay or profit, whether or not a profit is realized." 20

C.F.R. § 404.1572(a-b) (West 2009).

### C.    Material Effect of Substance Abuse

The Social Security Act, as amended in 1996,  states that "an individual

shall not be considered to be disabled ... if alcoholism or drug addiction would ...

be a contributing factor material to the Commissioner's determination that the

individual is disabled." <u>Mims v. Apfel</u>, 182 F.3d 900 (2d Cir. 1999) (<u>citing</u> 42

8

U.S.C. § 1382c(a)(3)(J) (Supp. II 1996)).  "In determining whether alcohol or

substance abuse is material to the determination of disability, the key factor is

whether the Commissioner would still find the claimant disabled if [he] stopped

using the alcohol or substance." Hernandez v. Astrue, ---F.Supp.2d ----, 2011 WL

1630847 at * 8 (E.D.N.Y. 2011) (citing 20 C.F.R. §§ 404.1535(b)(1);

416.935(b)(1)).  "Under the regulations, where there is evidence of alcoholism or

drug use, the Commissioner must determine which physical and mental limitations

would remain in the absence of substance abuse and whether these limitations

would be disabling on their own." Id., citing  20 C.F.R. §§ 404.1535(b)(2);

416.935(b)(2).  "If the remaining limitations would still be disabling to the

claimant on their own, then the claimant is entitled to ... SSD benefits.  If the

remaining limitations would not be disabling on their own, then the alcohol or

substance abuse is considered material; and the claimant would not be eligible for

benefits." Id., (citing  20 C.F.R. §§ 404.1535(b)(2)(ii); 416.935(b)(2)(ii);

404.1535(b)(2)(i); 416.935(b)(2)(i)).

       In the case at bar, the ALJ applied the a five-step sequential evaluation

process and determined that the plaintiff (1) meets the insured status requirement

of the Social Security Act; (2) has not engaged in substantial gainful activity since

October 4, 2006, the alleged onset date (20 CFR 404.1520(b) and 404.1571 et

9

seq.; (3) has the following severe impairments: a polysubstance induced schizoaffective disorder (20 CFR 404.1520(c)); (4) has impairments, including the substance use disorders, that meet sections 12.04 and 12.09 of 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d)). Doc. No. 6-2, pp. 15-16.  The ALJ also found that if the plaintiff stopped the substance abuse, he will continue to have a mild schizoaffective disorder that requires medication and is controllable with medication; if he stopped the substance abuse he would not have an impairment or combination of impairments that meets or medically equals any of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d)); if he stopped the substance abuse, he would have the residual functional capacity to perform a full range of work at all exertional levels but with the nonexertional limitation that he would only be able to perform simple tasks; and if he stopped the substance abuse, he would be able to perform past relevant work as an HVAC laborer.  The ALJ noted that when the plaintiff reported that he had been abstinent from substance abuse, he was able to volunteer at a blood drive, and did work for Habitat for Humanity.[2]  The ALJ held that because the plaintiff would not be disabled if he stopped the substance abuse, the plaintiff's

---

[2]        The court notes that plaintiff was also able to perform community service as directed by the court for the drug possession charge.

substance abuse disorder is a contributing factor material to the determination of disability.  "Thus, the [plaintiff] has not been disabled within the meaning of the Social Security Act at any time from the alleged onset date through the date of this decision." Id., pp. 16-18.

Plaintiff argues that the ALJ's findings are contrary to the history of this case and to the substantial evidence contained in the file.  Plaintiff alludes to his extensive medical records and 100% service connected disability for a schizoaffective disorder, as well as his many inpatient treatments when it was determined that plaintiff was a danger to himself or others.  Plaintiff admits that although there are multiple psychiatric hospitalizations primarily for mental illness, the hospitalizations are often related to substance abuse.  Plaintiff admits he has a substance abuse problem, evidence of which is plentiful throughout the medical transcript.  However, plaintiff argues that the ALJ erred in concluding that the symptoms plaintiff has exhibited over the years would not be of sufficient magnitude, but for his substance abuse, to allow the ALJ to find disability.  Plaintiff argues that the ALJ "is in fact making a medical opinion." Doc. No. 9 at p. 7.  Plaintiff also states that "[i]t is obviously clear that the average person with a substance abuse problem does not have suicidal ideation and full fledged psychotic symptoms." Id.   However, in the course of the court's review of the

medical transcript, the court noted an entry wherein the plaintiff phoned a mental health worker stating that he wanted to kill people, but later in the conversation "admitted that he makes suicidal or homicidal statements to get people's attention." Tr. 553.  The court notes that throughout the record, the involved agencies and psychiatric and medical personnel immediately, and understandably, went into action to secure inpatient status for the plaintiff when he voiced these suicidal / homicidal  ideations.

    The Commissioner points out many instances throughout the transcripts where treatment notes indicate that alcohol and drug abuse contributed to plaintiff's disability, which contradicts plaintiff's contention that the ALJ substituted a medical opinion for the evidence in the record.  The medical record is rife with opinions by medical professionals that substance abuse played a material part in plaintiff's disability.  The Commissioner quotes Dr. Elisabeth Gray, who examined the plaintiff at the Syracuse VA Medical Center after a relapse into substance abuse.  Dr. Gray stated, inter alia, that "his last inpatient psychiatrist came to the conclusion that his psychosis is substance induced, and I concur wholeheartedly that this is a young man whose most significant symptoms occur[] when he partakes heavily. His symptoms at this time cannot be separated from his substance abuse.  If he were ever to abstain for a significant period, then we could

determine which type of schizophrenia he has." Doc. No. 10, p. 10; Tr. 216.  A

doctor who was able to observe plaintiff both when he was influenced by

substances as well as when plaintiff was substance free stated, after an October 26,

2006 examination of the plaintiff, that plaintiff's complaints of paranoia,

suspiciousness, and inability to articulate clearly or logically appeared to be

"directly related to his polysubstance abuse this morning." Id., Tr. 206.

   Throughout the transcript, as stated to many medical and psychiatric

professionals, plaintiff has stated that when he abuses substances, he forgets to

take his medications for the schizoaffective disorder.  The record states that

"[h]istorically he tends to deny minimize or underreport" (Tr. 347) the substance

abuse, but on other occasions he is unusually forthcoming about his alcohol and

drug use, the expense he incurs to obtain drugs and alcohol on a regular basis, and

the fact that his 100% service connected disability compensation from the VA is

how he pays for the substances.  The VA compensation also negates the need for

him to work.  He states that his most commonly used substance is alcohol, and

admits has been drinking since age 12 (Tr. 449).  His first suicide attempt was at

approximately 13-14 years old (Tr. 471).  Plaintiff's first DUI was at age 16.  His

first alcohol rehabilitation was at age 17.  Plaintiff states that his second favorite

substance is pills, with Oxycontin by far his favorite, which he claims to have

started abusing when he was 16 years of age. He also admitted to taking Darvocet, Percocet or Valium.  He smokes marijuana and states that he will use cocaine or crack cocaine, though he prefers pure cocaine. He has also used heroin.  In response to questions about his substance abuse, plaintiff stated that "I can't control it. Once I take it into my body, I lose track of priorities completely. The future is no longer there." Tr. 215.

The Commissioner argues, and the court concurs, that although the plaintiff is deemed disabled by the VA, that decision is arrived at using guidelines that differ from the criteria utilized by the Social Security Act.  As stated supra, the Social Security regulations state that where there is evidence of alcoholism or drug use, the Commissioner must determine which physical and mental limitations would remain in the absence of substance abuse and whether these limitations would be disabling on their own ... If the remaining limitations would not be disabling on their own, then the alcohol or substance abuse is considered material; and the claimant would not be eligible for benefits." Hernandez v. Astrue, 2011 WL 1630847 at * 8.  The court finds that, based on the substantial evidence before it, the ALJ followed the appropriate criteria and methodology in finding that plaintiff is not entitled to disability insurance benefits, on the basis that plaintiff's drug and alcohol abuse were material to, and thus negated, a finding of disability.

14

**III.   Conclusion**

Accordingly, for the reasons set forth above, the decision of the

Commissioner is AFFIRMED, and the Commissioner's motion for judgment on

the pleadings (Doc. No. 10) is hereby GRANTED.  Plaintiff's motion for judgment

on the pleadings (Doc. No. 9) is hereby DENIED.  The Clerk is instructed to close

this case.

SO ORDERED.

February 29, 2012.

_____

Neal P. McCurn
Senior  U.S. District Judge